UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIELLE DAWN SMALLEY FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:12-CV-4721-G |
| JULIE ELLEDGE, ET AL., | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants Julie Elledge ("Elledge") and Story Quest Institute, Inc. ("Story Quest") to dismiss the plaintiff's claims against them for lack of personal jurisdiction (docket entry 4). For the reasons set forth below, the motion is denied.

### I. BACKGROUND

In 2010, the plaintiff Smalley Foundation, Inc. ("Foundation") began working with BP America, Inc. ("BP") to develop a youth safety program for students in East Texas. Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support ("Response") ¶ 3 (docket entry 10). In March

2011, a BP employee recommended that the Foundation contact Elledge as an educational consultant to help develop the program's curriculum and introduce it to teachers. *Id.* ¶ 4. Over a series of telephone conversations and email exchanges, the Foundation and Elledge discussed the educational program. *Id.* ¶ 5. In June 2011, the Foundation hired Elledge as an educational consultant. *Id*. Elledge and employees of her company, Story Quest, traveled to Texas several times to work with the Foundation to develop the curriculum and present it at Texas teacher workshops. *Id.* ¶¶ 6-9, 11-12. In September 2012, the Foundation learned of Elledge's involvement as a marriage therapist in a business called "Videos for Lovers," which distributes videos depicting explicit sexual activities and informed BP of its concerns. *Id.* ¶ 13. Thereafter, BP terminated its relationship with the Foundation. *Id.*

The Foundation subsequently brought this action against Elledge and Story Quest for breach of contract, tortious interference with contractual relations, misrepresentation, and failure to disclose. The defendants move to dismiss the Foundation's claims against them for lack of personal jurisdiction. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") at 1 (docket entry 4).

## II. ANALYSIS

### A. The Factual Standard: A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's

jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods.  *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048(1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B.  The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore v.*

*Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction.  *Id*.  Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041, *et seq*. (Vernon 1997) (Texas long-arm statute).

C.  Due Process Requirements

1.  *Minimum Contacts*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures

that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales*, 466 U.S. at 417 (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the

forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id*. at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

2. *Fair Play and Substantial Justice*

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Once the plaintiff establishes minimum contacts between the defendants and the forum State, the burden of proof shifts to the defendants to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). To determine whether personal jurisdiction comports with fair

play and substantial justice, the court must examine a number of factors, including: (1) the defendants' burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). "[O]nce minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F.Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### D. Application of the Personal Jurisdiction Standards

#### 1. *General Jurisdiction*

The claims against Elledge and Story Quest in this case relate to their contact with Texas, and the Foundation has not alleged that the defendants had continuous and systematic contacts with Texas. Therefore, the court will not address the issue of general jurisdiction.

2. *Specific Jurisdiction*

To exercise personal jurisdiction over Elledge and Story Quest, the court must conclude that (1) the movants have established minimum contacts with the state of Texas, (2) the plaintiff's cause of action is related to those contacts, and (3) the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006).

a. Personal Jurisdiction Over Elledge

There is a significant connection between Elledge, Texas, and the Foundation's claims that permits the exercise of specific jurisdiction in this case. The Foundation contends that Elledge negotiated with and entered into a contract with a Texas corporation, understanding that she would be required to develop educational materials for the plaintiff and "would be required to travel to Gregg County [, Texas] to help develop the program and introduce it to the teachers." Response ¶ 5. In accordance with this contract, Elledge traveled to Texas to attend a teacher workshop and also visited the Foundation's offices in Texas to further discuss the program's development. *Id.* ¶ 6. Subsequently, Elledge entered into another agreement with the Foundation and BP America, two Texas-based entities, to further develop an educational curriculum in line with Texas scholastic standards. *Id.* ¶¶ 7, 19. As part of this second agreement, Elledge traveled to Texas four more times either to discuss

the development of the program's curriculum with Foundation employees or to present that curriculum to Texas teachers. *Id.* ¶¶ 9, 11-12. Elledge's multiple visits to Texas for the educational conferences and curriculum development meetings, as part of her ongoing business relationship with two Texas-based companies, are sufficient to establish minimum contacts. The defendant's contacts with Texas were not "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 480. Accordingly, the plaintiff has met the first prong of the specific jurisdiction test.

The second prong of the specific jurisdiction test requires that the plaintiff's claims be related to Elledge's contacts with the plaintiff. In the present case, the plaintiff's suit clearly arose out of Elledge's work for the Foundation as an educational curriculum consultant. *See* Response ¶ 13. Consequently, the second prong of the test is satisfied.

Finally, the court must find that it would be fair to exercise jurisdiction over Elledge. In the case *sub judice*, Elledge's interactions with the Foundation while developing the curriculum and her multiple business trips to Texas gave Elledge fair warning that she could be haled into court in Texas. See *Burger King*, 471 U.S. at 472-73. The defendant maintains that litigating as a nonresident places a substantial burden on her time and finances. Motion ¶ 16. This claim is mitigated by the fact that the defendants have already have retained local counsel to represent them. See, *e.g.*, *Examination Management Services, Inc. v. Partners for Insurance, L.L.C.*, 2005 WL

- 10 -

280323, at *5 (N.D. Tex. 2005). The Supreme Court has stated that "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigation in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474. Also, contrary to the defendant's claim the State of Texas has a substantial interest in regulating the manner in which nonresidents contract with Texas corporations. See *id.* at 473 ("[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors").

The plaintiff is a Texas corporation, located in Kaufman County, Texas. Response ¶ 1. Therefore, Texas has an interest in the outcome of this litigation. Additionally, providing a local forum for the resolution of disputes such as the one before this court certainly comports with "fair play and substantial justice." The assertion of personal jurisdiction by this court is fairly and safely within the limits imposed by due process. Therefore, the court concludes that it has personal jurisdiction over Elledge.

### b. Personal Jurisdiction Over Story Quest

A significant connection also exists between Story Quest, Texas, and the Foundation. In June 2011, the Foundation, BP, and Elledge entered into an agreement where BP would pay for Elledge's consulting services while she continued

to work with the foundation to develop the curriculum for Texas schools.  Response ¶ 7.  In July 2011, Elledge incorporated Story Quest, which worked on writing the program curriculum.  *Id.* ¶ 8.  In August 2011, Elledge returned to Texas with three Story Quest contract employees to participate in a teacher workshop where she distributed the materials developed by Story Quest and bearing the company's logo.  *Id.* ¶ 9.  Story Quest featured pictures of the Texas teacher workshop on its company website.  *Id.*  In 2012, Elledge, as the head of Story Quest, twice visited Texas to meet with the Foundation and discuss the educational program.  *Id.* ¶ 11.  In August 2012, Elledge and other Story Quest employees visited Texas again to help the Foundation implement the safety education program in Gregg County, Texas.  *Id.* ¶ 12.  Although the defendants created and worked on much of the curriculum in Wyoming, meetings with the Foundation regarding the program all occurred in Texas, as did the program rollout and presentation to Texas teachers.  See *id.* ¶¶ 9, 11-12.  All of the defendant's activities in Texas, taken together, establish that it should have reasonably anticipated being haled into court in Texas.  *Burger King*, 471 U.S. at 474-75.

Story Quest urges that it would offend traditional notions of fair play and substantial justice to subject it to litigation in Texas.  Motion ¶ 16.  In *Burger King*, the Supreme Court stated that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing

relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473.

Turning now to the factors articulated in *Asahi* previously articulated, the court concludes that the burden on the defendants is minimal. See *Asahi*, 480 U.S. at 113. Elledge, as the head of Story Quest, and several contract employees have already traveled to Texas on multiple occasions to present their curriculum to Texas teacher workshops. Response ¶¶ 9, 11-12. Also, Story Quest, like Elledge, has retained local counsel to represent it in this case. *See* Notice of Appearance (docket entry 7).

Second, Texas has an interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. The plaintiff is a Texas corporation, and providing a local forum for the resolution of disputes such as the one before this court certainly comports with "fair play and substantial justice." The assertion of personal jurisdiction by this court is fair and safely within the limits imposed by due process.

Accordingly, the court concludes that the plaintiff has met the burden of establishing specific personal jurisdiction over Elledge and Story Quest.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

- 13 -

**SO ORDERED**.

September 17, 2013.

_____
**A. JOE FISH
Senior United States District Judge**